GkeeN, J.
delivered the opinion of the court.
The bill in this case alledges that Peter H. Cole departed this life in 1823, having made his last will and testament and appointed complainants his executors. The testator devised his negroes to his wife, and created a charge upon his real estate for the payment of his debts, certain portions of which he directed to be sold. The land in the Western District they have been unable to sell, except at a great sacrifice, and therefore did not dispose of it. The house and lot in Clarksville, was the only productive property, and as income was necessary for the support and education of the defendant, who was not more than four or five years old at the time of his father’s death, complainants were anxious to preserve this property for him and, therefore, did not sell it, .but improved the lot by building a kitchen and smoke house, and rented it out, receiving the rents. Complainant Hinton taught a school and the defendant boarded with him, and was instructed by him for several years, at fifty dollars per session, amounting in all to $842 78.
*657 The debts were considerable, and the personal property, except the negroes, small, and in the anxiety of complainants to preserve the said house and lot in Clarksville, for defendant, they have advanced large sums in payment of the debts out of their own funds. Complainants represent that it would be for the interest of the defendant that portions of the real estate of the testator, not particularly directed tó be sold, should be disposed of for the payment of the debts. These debts consist of sums paid the creditors out of the private funds of the complainants, expenditures for the improvement of the lot in Clarksville, and the amount due for the board and tuition of the defendant to Hinton one of the complainants. The bill prays a settlement of their account as executors, and also for the rents received and disbursed, and that said Hinton’s accountforthe board and tuition of the defendant be adjusted and settled; and finally that the court decree the sale of such real estate as to it may seem right, to raise a fund for the discharge of the before mentioned debts which remain unpaid.
The will of the testator is made an exhibit in which the ne-groes are devised to his wife, and his Forked Deer land, his Red River tract and s o much of his town lots, at the discretion of his executors, as might be sufficient to satify his debts, were to be sold.
The will also has this clause: “I desire that allrents, monies or profits in any wise arising from my land and lots, be appropriated to the support of my family.” The defendant answered by his guardian, submitting to an account, and making no objection to the frame of the bill.
At the March term ofthe chancery court at Clarksville, inl838, an interlocutory order was made by consent, referring the cause to the master to take an account. At the March term, 1840, the exceptions to the master’s report coming on for hearing, the chancellor decreed that exceptions be sustained, “and that the clerk and master take an account de novo on the testimony in this cause, showing what effects came to the hands of the executors under the will of Peter'H. Cole, what property was sold by them to pay debts, and the value thereof at the time of the sale, allowing the executors, all just and legal credits by way *658 of disbursements, and tbat he further report and show to the court the necessary expenses and disbursements, made by the executors for the use and benefit of the said Henry A. Cole, including his board and clothing; the necessary expenses for improvements on his house and lot in Clarksville; allowing the said Henry A. Cole a credit for the rent of the said house and lot, and for rent of farm, and for any timber that may have been cut and sold, or injury that may have been done to the land by virtue of any lease or leases that the executors may have given on the land; all other questions as to the rights of parties are reserved for argument at the next term • of this court, and that he further report and show by his account the rent of the house and lot, and the improvements made by the executors upon the house and lot, separate and distinct from the charges and disbursements.” The clerk and master made his report in obedience to the foregoing decree, which was excepted to, and the cause coming on to be heard at March term, 1842, a decree was made dismissing the bill with costs, withoutprejudice, without noticing or disposing of the exceptions to the master’s report.
From this decree the complainants prosecute this appeal.
The final decree does not show the ground upon which the chancellor proceeded in dismissing this bill, but we are told in the argument here, that he adjudged it to be multifarious, and dismissed it on that account. We do not think this bill is multifarious. The testator owned various tracts of land, and sev-' eral town lots in Clarksville. Two of these tracts and the town lots were directed to be sold, at the discretion of executors for the payment of his debts. For reasons stated in the bill a valuable town lot in Clarksville, and a tract of land in the Western Distract had not been sold. The executors had disbursed their private funds in the payment of debts and the estate was in arrears to them. They had rented town lots and lands and received the profits, had improved the real estate by the erection of houses, and one of the complainants had a claim against the defendant for board and tuition. All these items they insist constitute the debts which are a charge upon the defendant’s real estate, and they pray the court to direct what part of the *659 real estate shall be sold to constitute a fund for the payment of these debts.
In order that the chancellor might be enabled to see what part, and how much of the real estate should be sold, they pray that an account be taken, and the balance due them be ascertained.
Clearly there is nothing multifarious in this. The principal matter for which the bill is filed, is to obtain the direction and authority of the chancery court for the sale of a portion of the real estate to pay debts. As an incident to the decree sought, the settlement of their accounts is indispensable. It may be, that they ask a sale of land, for the payment of debts they had no right to contract, and which the defendant is not bound to pay. Still the exhibition of 'such an item in their bill does not make it multifarious. • If it be wrong, let it be rejected in taking the account. But certainly, the question whether the defendant’s lands should be -sold to pay for the improvements on the lot in Clarksville, or for the board and tuition of the defendant at Hinton’s, cannot affect the right of the executors to a decree for the sale of lands to pay any sums they may have advanced out of their own funds in payment of the testator’s debts. But we apprehend that any necessaries which Hinton furnished the defendant should be paid for, and might be retained by him as executor if he had funds in his hands.
If the will gives him authority to sell land for the payment of debts, and he chooses to come into a court of chancery, that his discretion may be controlled and directed by the court, no reason can be seen why this matter may not be taken into the account.
The improvement upon the lot in Clarksville, is also a proper subject for the account. The rents that have been received, although not properly within the scope of their duties as executor's, still having assumed the trust, and it being a matter in reference to the general subject of the estate, and between the same parties, should be taken into the account, and does not constitute the bill multifarious. Story on Pleadings, sec. 535, p. 410, sec. 539.
2. But if upon a strict scrutiny of this bill, it should turn out *660 to be liable to the objection of multifariousness, the objection comes too late. The defendant should have demurred to the bill. He has not done so, but has answered, submitting to an account, without any objection, even in the answer, to the frame of the bill.
Mr. Justice Story, in his Commentaries on Equity Pleading, sec. 284, says: “if the objection for multifariousness be not taken by demurrer and the cause goes on to a hearing, the objection is waived by the parties although the court proprio jure may insist upon it.” And so this court held, at the present term, in the case of Hickman vs. Cooke and others. But in this case the court did not insist upon it at the hearing. In March, 1888, a decretal order was made, referring the matter to the master for an account.
In March, 1840, upon exceptions to that account, the cause was again heard, the exceptions sustained, and a decree particularly settling the matters, which were submitted for account, was rendered, and the whole case again referred for the master’s report. In March, 1842, that report came on, upon exceptions, and the chancellor disregarding the exceptions, dismissed the bill, as we are told for multifariousness. We think after an interlocutory decree, it is too late for the court, proprio jure, to insist upon this objection.
All the expense has then been incurred, and much of it by reason of the action of the court. Had the chancellor dismissed this bill in March, 1838, when it was first before him, the costs would have been trifling and the parties could have had their dispute settled before this time, by abill differently framed. A large amount of costs have been incurred, and four years delay by reason of the action of the court.
After all this, we think it is too late for the court to insist upon the objection, after it has been waived by the parties, especially in a case like this, where if the objection exist at all, certainly no insuperable difficulties are in the way of an easy adjustment of the whole matter.
Let the decree be reversed and the cause remanded to be proceeded in,